PROCTER *v*. MATHERS ET AL.

*Trusts—Purposes general and charitable—Court of equity may apply to other purposes, when—Funds of 83rd Division, U. S. A.*

Where the purposes for which a trust fund was created are general and charitable in their nature, and have become inoperative and incapable of execution, a court of equity will apply the fund to other purposes which are as nearly as possible akin to the original purposes, by the application of the doctrine of *cy pres*.

(Decided December 11, 1922.)

APPEAL: Court of Appeals for Hamilton county

*Messrs. Dinsmore, Shohl & Sawyer*, for plaintiff.
*Mr. Richard T. Dickerson* and *Mr. F. A. Hunter*, for defendants.
*Mr. Gilbert Bettman*, for the American Legion.
*Messrs. DeCamp, Sutphin & Brumleve*, for the Eighty-Third Division, Historical Society.
*Mr. John G. Price*, attorney general, and *Mr. Henry G. Hauck*, assistant attorney general, for State of Ohio.
*Mr. Francis J. Cook*, for the Department of Ohio, Veterans of Foreign Wars of the United States.

CUSHING, J. This cause is heard on appeal from the court of common pleas of Hamilton county.

The question for consideration is the distribution of a fund in excess of $115,000, now in the hands of plaintiff as custodian, or as an alleged trustee.

The petition states that in 1917 a number of

Ohio citizens, cooperating with Major General Edwin F. Glenn, of the United States Army, then in command of the 83rd Division, stationed at Camp Sherman, Ohio, together with the service men of that division undertook to raise money throughout the state of Ohio to provide a fund for the benefit, aid and comfort of the men of the 83rd Division, and that pursuant thereto, football games and military exhibitions were given in various parts of the state, the money realized therefrom aggregating approximately $100,000. This sum, at that time, was placed in the control of General Glenn, to be by him held as trustee. Disbursements were to have been made as he directed, for any of the purposes stated, namely, the benefit, aid and comfort of Ohio men in military service in the 83rd Division.

In May, 1918, no part of the fund had been used or expended. Many of the Ohio men under General Glenn had been transferred to other divisions, and General Glenn was about to be sent overseas.

General Glenn entered into an arrangement by which the plaintiff, Procter, became the custodian, or alleged trustee, of the fund. It had increased by interest accumulation. Disbursements were to be made by plaintiff. He was authorized to use his judgment and discretion in such disbursements, limited, however, to the purpose for which the fund was created.

It was further arranged that he was to honor and execute any request made by General Glenn for an expenditure within the purposes for which the fund was held.

It was stipulated that if General Glenn did not within a year suggest an expenditure of any

or all of the money for the Ohio soldiers in France, the fund should be held for the benefit of Ohio soldiers "here."

About January 2, 1919, General Glenn requested plaintiff to deliver to him $2500 of said fund, to be used to pay expenses in compiling a history of the 83rd Division. Plaintiff was uncertain as to whether or not an appropriation of the money for this purpose would be within the provisions of the trust agreement. Desiring to comply with the request of General Glenn, he sent him $2500 of his own money, thus leaving the trust fund intact.

The petition recites that the original object for which the trust fund was obtained is impossible of accomplishment; that the year within which General Glenn could make a request for expenditures from the fund has expired; and that the fund has for many months been unused. The request is made in the petition that without further delay some provision be made for a use to which the fund may be put.

The petitioner suggests that in a proper distribution of the fund he should be authorized to pay himself out of it the sum of $2500, advanced as aforesaid; that he be authorized to transfer the balance of the fund in accordance with the plan suggested by him; and that he be discharged from all further responsibility.

Defendants, Samuel Mathers and John Willys, admit the allegations of the petition and join in the request for the order prayed for in the plaintiff's petition.

The American Legion, department of Ohio, was permitted to interplead. It stated that it is a

corporation under the laws of the state of Ohio, and is part of the American Legion, incorporated under an Act of Congress of the United States, and is composed of men and women, living in the state of Ohio, who were in the military or naval service of the United States during the Great War, and claims that it is the organization best fitted by its membership and objects to carry into effect the purposes for which the trust fund was created, as described in plaintiff's petition.

The intervenor, the American Legion, states the purposes of its organization to be as follows:

"For God and Country we associate ourselves together for the following purposes: To uphold and defend the Constitution of the United States of America; to maintain law and order; to foster and perpetuate a one hundred per cent Americanism; to preserve the memories and incidents of our association in the Great War; to inculcate a sense of individual obligation to the community, state and nation; to combat the autocracy of both the classes and the masses; to make right the master of might; to promote peace and good-will on earth; to safeguard and transmit to posterity the principles of justice, freedom, and democracy; to consecrate and sanctify our comradeship by our devotion to mutual helpfulness."

The Historical Committee of the 83rd Division has intervened and prays that it be allowed the sum of $50,000 for the purpose of preparing a detailed history of the 83rd Division, to include the story of its existence from the time of its creation until its return from overseas, and requests that the balance of the fund be turned over to the

American Legion, Department of Ohio, upon such terms as the court deems just and equitable.

The state of Ohio has intervened, and joins the plaintiff in the prayer of the petition.

Three members of the 83rd Division filed an answer on behalf of themselves, and all other members of the 83rd Division.

The first question presented is whether or not the purposes for which the fund was created have become inoperative and cannot be carried into effect; and whether the fund is now subject to execution as nearly as circumstances admit, by the application of the doctrine of *cy pres.*

Counsel in their briefs have attempted to question the jurisdiction of this court over the subject-matter of the action. This question was not presented to the court below, nor is it made by the pleadings.

Each party has requested the court to dispose of the fund according to its theory, and in a way different from the idea that prompted its creation. Each also claims that its plan is the one that will be as near to the original intention as circumstances will admit. In any event a court of equity is the only source of relief.

It may be that there are few, if any, cases similar to the one at bar. Reflecting on the method of the creation of the fund, it may be said that the fund necessarily falls within the class designated as charity, although the motive that prompted the giving was patriotism, superinduced by the humanitarian impulses of the donors.

In the case of *Le Clercq* v. *Trustees,* 7 Ohio, pt. 1, 217, at page 221, the court said:

"If the object of its creation can be obtained, the

court of chancery will enforce its execution.    9
Cranch, 52.   Where circumstances are so changed,
that the direction of the donor prescribing the
use, can not be literally carried into effect, the
legislature or the court, in those cases where gener-
al intention can be effected, may lawfully, in some
cases, enforce its execution as nearly as circum-
stances admit, by the application of the doctrine
of *cy pres.*"

The evidence supports in the main the allega-
tions of the petition.   At the time of the creation
of the fund the country was aflame with patriotism
and gratitude to the soldiers in the service of the
country.   It is clear from the evidence that at
the time the fund was created it was the intention
that it should be used only for the benefit of the
soldiers of the 83rd Division after their arrival in
France.   This appears from that part of the evi-
dence bearing upon inducements, as set forth in
the advertisements in the different cities where ex-
hibitions were given, which recited that the donors
were to contribute to the fund with the under-
standing that it would be used for "the welfare
of Ohio sons who have risked their lives for you
and me and liberty."   It follows, then, that the
fund was intended for the use of Ohio soldiers.

There are now no such organizations as existed
at the time of the creation of the fund.   There
are now no Ohio soldiers in France.   They have
been discharged.   The war is a memory.   Many
organizations now exist that are the outgrowth of
the war.   They are laudable and will greatly bene-
fit the ex-soldiers.   Some of these organizations
have intervened here.

In considering this case we have taken judicial

notice of the history of similar organizations in the United States for the past fifty years. We refer particularly to the military organizations formed after the Civil War. The one outstanding, all-inclusive military organization growing out of that war is the Grand Army of the Republic. Many other organizations that were formed after the Civil War have disappeared. The rule seems to have been that if any ex-soldier of that war was a member of any other organization, he was also a member of the Grand Army of the Republic. History, no doubt, will repeat itself. As the Grand Army of the Republic, representing the ex-soldiers, is to the Civil War, so the American Legion is and will be to the ex-soldiers of the World War.

The Ohio Department of the American Legion is on a solid basis. It is permanent and will in time become stronger than it is at present. Support of the American Legion from any source would redound to the benefit, aid and comfort of Ohio ex-service men in the World War. The 83rd Division, as alleged, was scattered, many of its members were transferred to other divisions in this and other states. It is not now possible to distribute the fund to the 83rd Division as such. The ex-soldiers, members of the 83rd Division, residents of Ohio, are or will be members of the American Legion, and will be benefited by any donation to or provision for the benefit of the American Legion.

The obligation to the returned sick and disabled soldiers rests on the government of the United States. It involves obligations greater than the dream of private donors. The government will discharge its full duty in that regard.

On the whole we are of the opinion that the general intent of the donors of this fund can now be most nearly carried out by giving the fund to the American Legion, Department of Ohio.

Another question for consideration is the method that should be adopted in distributing the fund to the American Legion.

It is common knowledge that many of the subordinate posts in the state are having difficulty in financing themselves. This is emphasized by the fact that many of the posts are giving benefits, taking up subscriptions, and resorting to other means for the purpose of raising money to fit out headquarters and purchase supplies. When we think of the purpose for which the fund was created, for the benefit, aid and comfort of Ohio soldiers, and that it was to be used in France for the purchase of little luxuries, rubber boots, necessities and other supplies, it would seem in keeping with that thought that the fund should be employed in furnishing the various headquarters of the legion with equipment to make them more comfortable and attractive, so that the ex-soldiers may there hold their business meetings, and gather to talk over their experiences in the World War, and carry out the purposes for which the American Legion was formed. We are thus led to the conclusion that a distribution of the fund direct to the subordinate posts of the Legion is the nearest approximation to the purpose for which the fund was created.

Our conclusion is that the fund should be distributed pro rata among the subordinate posts of the American Legion, Department of Ohio, that are now in existence, for the purpose of providing

and furnishing headquarters, and to be expended under the direction of the subordinate posts.

We have given the claim of the Historical Society serious consideration, but the purpose suggested, namely, to make a history, is so foreign to the clear intention of the donors and the purpose for which the fund was raised that we are of the opinion that the claim of the Historical Society is without merit.

An order may be drawn directing the plaintiff, William Cooper Procter, custodian, or alleged trustee of the fund, to ascertain the number of subordinate posts in the Department of Ohio of the American Legion, that are now in existence, and to pro rate the fund remaining in his hands among such subordinate posts; to take receipts from such posts; and upon completion of the distribution to report it to this court, together with the vouchers, whereupon he will be discharged from his trust.

*Decree accordingly.*

HAMILTON, P. J., and BUCHWALTER, J., concur.

ON APPLICATION FOR LEAVE TO FILE INTERVENING PETITION.

This case was submitted to the court and heard some months since. Recently the Department of Ohio, Veterans of Foreign Wars of the United States, applied to this court to reopen the case and allow it to intervene.

We have examined the organization's application for leave, and the intervening petition it asks to file in this case.

We do not deem it advisable at this time to enter

into a discussion of the numerous grounds for refusing this application. It is sufficient to say that in our judgment the purposes of this organization are not as near to the objects for which this fund was created as are the purposes of the parties that are now in the case.

The application for leave to intervene is denied.

*Application denied.*